11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Jennifer L. Barko 

Appellant

Vs.                   No. 
11-02-00237-CV -- Appeal from Collin County

Robert B. Genzel, M.D. 

Appellee

 

This case
involves the former Medical Liability and Insurance Improvement Act=s (hereinafter Athe former Act@)
expert report requirements.  See TEX.
REV. CIV. STAT. ANN. art. 4590i, section 13.01, repealed by Act of June 2,
2003, 78th Leg., R.S., H.B. 4, '' 10.01, 10.09, 23.02(a) (amended and codified at TEX. CIV. PRAC. &
REM. CODE ANN. ' 74.351, effective September 1, 2003).  The trial court dismissed Jennifer L. Barko=s medical malpractice claims after it
determined that she did not file an expert report which satisfied the former
Act=s requirements.  Appellant challenges the trial court=s determination in a single issue.  We affirm.

Appellant
alleges in her petition that she went to the emergency room of Columbia Medical
Center of Plano, a Subsidiary, L.P., d/b/a Medical Center of Plano (the Ahospital”) on October 26, 1999, complaining
of a back injury.  Dr. Robert B. Genzel
treated appellant in the emergency room. 
Appellant reported to Dr. Genzel that she felt something pop in her back
while exercising at home.  She had
previously undergone an L4-L5 lumbar laminectomy in 1996.  She also advised Dr. Genzel that she was
pregnant.  After prescribing various
pain medications, Dr. Genzel discharged appellant from the emergency room with
instructions to follow up with her neurosurgeon.  

Appellant
returned to the emergency room on October 27, 1999, whereupon Dr. Genzel
re-examined her.  Appellant reported on
the second visit that her pain had worsened and that she had developed a foot
drop.  Dr. Genzel prescribed additional
pain medication.  He then discharged
appellant from the second visit with instructions for her to follow up with her
neurosurgeon.  








Appellant
was examined by her neurosurgeon on October 28, 1999.   She alleged that the neurosurgeon diagnosed a large disc
re-herniation with significant L5 nerve damage to the left side. Surgery to
repair the injury occurred on October 29, 1999.  Appellant also suffered a miscarriage on October 29, 1999.

Appellant
contends that Dr. Genzel failed to timely diagnose and treat her back
injury.  She additionally asserts that
the negligent acts and omissions of Dr. Genzel and the employees of the
hospital caused the miscarriage.  In
addition to the miscarriage, appellant contends that she suffered permanent
neurologic damage as a result of the alleged delay in diagnosis. 

Appellant
filed suit against Dr. Genzel and the hospital on July 16, 2001.  She filed two expert reports prepared by Dr.
Mark C. Smedley, M.D., of Loomis, California, in an attempt to comply with the
former Act=s expert report requirements.  Dr. Genzel and the hospital filed motions to
dismiss appellant=s
claims which challenged the sufficiency of Dr. Smedley=s reports. 
The trial court granted the motions to dismiss in a written order which
stated as follows:  AThe Court finds that the first and second
reports of Dr. Smedley are inadequate as to causation/injury as to [the
hospital] and Robert B. Genzel, M.D.”[1]  Appellant now appeals from the order of
dismissal with respect to her claims against Dr. Genzel.[2]

The Texas
Supreme Court has issued two recent opinions which address challenges to the
sufficiency of an expert report filed in support of a medical malpractice
action:  Bowie Memorial Hospital v.
Wright, 79 S.W.3d 48 (Tex.2002), and American Transitional Care Centers
of Texas, Inc. v. Palacios, 46 S.W.3d 873 (Tex.2001).  As noted in Bowie Memorial Hospital v.
Wright, supra at 51:








Medical‑malpractice
plaintiffs must provide each defendant physician and health‑care provider
an expert report with the expert=s curriculum vitae, or they must voluntarily nonsuit the action.  See 
TEX.REV.CIV.STAT. art. 4590i, ' 13.01(d); American Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 877 (Tex.2001). 
The expert report must provide Aa fair summary of the expert=s opinions as of the date of the report regarding applicable standards
of care, the manner in which the care rendered by the physician or health care
provider failed to meet the standards, and the causal relationship between that
failure and the injury, harm, or damages claimed.@  TEX.REV.CIV.STAT. art. 4590i, ' 13.01(r)(6).  If a plaintiff timely files an expert report and the defendant
moves to dismiss because of the report=s inadequacy, the trial court must grant the motion Aonly if it appears to the court, after hearing, that the report does not
represent a good faith effort to comply with the definition of an expert
report in Subsection (r)(6) of this section.@ TEX.REV.CIV.STAT. art. 4590i, ' 13.01(l) (emphasis added).

 

We
recently discussed the Act=s expert‑report requirement for medical‑malpractice
cases.  See Palacios, 46 S.W.3d
at 877‑80.   In Palacios,
we explained that, when considering a motion to dismiss under section 13.01(l),
A[t]he issue for the trial court is whether >the report= represents a good‑faith effort to comply with the statutory
definition of an expert report.@  Palacios, 46 S.W.3d at
878.   To constitute a Agood‑faith effort,@ the report must provide enough information
to fulfill two purposes:  (1) it must
inform the defendant of the specific conduct the plaintiff has called into
question, and (2) it must provide a basis for the trial court to conclude that
the claims have merit.  Palacios,
46 S.W.3d at 879.

 

The trial
court should look no further than the report itself, because all the
information relevant to the inquiry is contained within the document=s four corners.  Palacios, 46 S.W.3d at 878.   The report need not marshal all the plaintiff=s proof, but it must include the expert=s opinion on each of the three elements that
the Act identifies:  standard of care,
breach, and causal relationship.  Palacios,
46 S.W.3d at 878.   A report cannot
merely state the expert=s conclusions about these elements. 
Palacios, 46 S.W.3d at 879. 
A[R]ather, the expert must explain the basis
of his statements to link his conclusions to the facts.@  Earle
v. Ratliff, 998 S.W.2d 882, 890 (Tex.1999).

 

We review
a trial court=s order dismissing a claim for failure to
comply with section 13.01(d)=s expert‑report requirements under an abuse‑of‑discretion
standard.  Palacios, 46 S.W.3d at
878.   A trial court abuses its
discretion if it acts in an arbitrary or unreasonable manner without reference
to any guiding rules or principles.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241‑42
(Tex.1985).  When reviewing matters
committed to the trial court=s discretion, a court of appeals may not substitute its own judgment
for the trial court=s
judgment.  See Flores v. Fourth Ct.
of Appeals, 777 S.W.2d 38, 41 (Tex.1989). 
(Emphasis in original)

 








As was the
case in Wright, the trial court in this matter was required to determine
whether appellant filed an expert report which constituted a good-faith effort
to fairly summarize the causal relationship between Dr. Genzel=s alleged breach and appellant=s alleged injury.  Dr. Smedley began his reports by listing the medical records that
he had reviewed in order to prepare the reports.  He then provided a detailed synopsis of the relevant medical
records.  The next section of Dr.
Smedley=s reports is labeled ADiscussion/Analysis.@  With
respect to appellant=s
first visit to the emergency room on October 26, 1999, Dr. Smedley stated that
Dr. Genzel properly evaluated appellant=s condition.  Dr. Smedley found
fault with Dr. Genzel=s
treatment on the second visit.  Dr.
Smedley asserted that Dr. Genzel should have ordered an MRI examination in the
face of worsening neurological signs and symptoms.  Dr. Smedley=s second report concludes with the following section labeled AOpinion@:

Dr. Genzel violated standards of Emergency
Medical practice by not exercising due diligence in his second physical
examination and not performing a thorough and accurate neurological
examination, thusly missing the patient=s progressing foot drop, and not proceeding to neurological
consultation and the consideration of diagnostic imaging with consultation and
clearance by obstetric consultation. 
The medical record is inaccurate and inconsistent.  There is a lay description by phone of Athe L foot turning in@ and a sister who is an RN observed Aworsening foot drop@ 2 hours after the 10-27-99 visit.  These violations of the standards of
emergency medical practice were a proximate cause in this patient=s injury.[3]

 

Standing alone, the final
sentence of Dr. Smedley=s reports is insufficient to satisfy the expert report requirements
outlined in Wright and Palacios because it merely stated the
expert=s conclusions about causation.  Bowie Memorial Hospital v. Wright, supra
at 52-54; American Transitional Care Centers of Texas, Inc. v. Palacios,
supra at 879.  

The
injuries for which appellant seeks a recovery primarily consist of permanent
neurological damage and the miscarriage.  
Dr. Smedley=s
reports do not link the miscarriage to Dr. Genzel=s care. 








With respect to the
alleged permanent neurological damage, appellant argues that the reports
sufficiently address causation because they detail her progressively
deteriorating condition following Dr. Genzel=s examination.  However, the
reports do not indicate that appellant would have satisfactorily recovered from
the back injury but for Dr. Genzel=s alleged negligence.  The
reports do not state that back surgery would have been avoided without Dr.
Genzel=s alleged negligence. Furthermore, the
reports make no attempt to eliminate either the back injury itself or the
attempt to surgically repair it as a potential cause of the permanent
neurological damage.  After reviewing
Dr. Smedley=s reports, we conclude that the trial court
could have reasonably determined that the reports did not represent a
good-faith effort to summarize the causal relationship between Dr. Genzel=s alleged failure to meet the applicable
standards of care and appellant=s alleged injuries.  Appellant=s sole issue is overruled.

The trial
court=s judgment is affirmed.

 

W. G. ARNOT, III

CHIEF
JUSTICE

 

September 25, 2003

Panel consists of:  Arnot, C.J., and                    

Wright, J., and McCall, J.











     [1]There
is a dispute as to whether the trial court permitted the untimely filing of Dr.
Smedley=s second expert report.  This controversy is immaterial to the resolution of this appeal
because the two expert reports are virtually identical regarding the issue of
causation.    





     [2]Appellant
previously dismissed the appeal arising from her claims against the hospital.





     [3]The
AOpinion@ section of Dr.
Smedley=s first report reads:

 

Dr. Genzel
violated standards of Emergency Medical practice by not exercising due
diligence in his second physical examination and missing the patient=s progressing foot drop.  The medical record is inaccurate and inconsistent.  There is a lay description by phone of Athe L foot turning in@
and a sister who is an RN observed Aworsening
foot drop@ 2 hours after the 10-27-99 visit.  These violations of the standards of
emergency medical practice were a proximate cause in this patient=s injury.